EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GARY L. SMITH,** | |
| **Plaintiff,** | |
| **v.** | **Case Number: 1:16-cv-04717** |
| **Zimmer US, Inc., Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Surgical, Inc., Zimmer Daniel and Zimmer Daniel & Associates** | |
| **Defendant.** | |

## **PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW AND JURY DEMAND**

NOW COMES the Plaintiff, GARY L. SMITH, by and through his attorney, PETER J. FLOWERS of MEYERS & FLOWERS, L.L.C. complaining against Defendant Zimmer US, Inc., Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Surgical, Inc., Zimmer Daniel and Zimmer Daniel & Associates and allege:

## **COMMON ALLEGATIONS**

1.      GARY SMITH was implanted with a Zimmer DUROM Hip System (hereinafter referred to as "DUROM").

2.      GARY SMITH is a resident of Cowden in the State of Illinois.

3.      At all relevant times, Zimmer US, Inc. was registered as a Delaware Corporation.

4.      At all relevant times, Zimmer US, Inc. was duly registered and/or licensed to do business in the State of Illinois.

5.      Zimmer US, Inc.'s registered agent in Illinois is Corporation Service Company located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

6.      At all relevant times, Zimmer, Inc. was registered as a Delaware Corporation.

2

7.      At all relevant times, Zimmer, Inc. conducted business in the State of Illinois.

8.      Zimmer, Inc.'s registered agent is Corporation Service Company located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

9.      At all relevant times, Zimmer Holdings, Inc. was registered as a Delaware Corporation.

10.     At all relevant times, Zimmer Holdings, Inc. conducted business in the State of Illinois.

11.     Zimmer Holdings, Inc.'s registered agent is Corporation Service Company located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

12.     At all relevant times, Zimmer Surgical, Inc. was registered as a Delaware Corporation.

13.     At all relevant times, Zimmer Surgical, Inc. conducted business in the State of Illinois.

14.     Zimmer Surgical, Inc.'s registered agent is Corporation Service Company located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

15.     Zimmer US, Inc., Zimmer, Inc., Zimmer Holdings, Inc. and Zimmer Surgical, Inc. will herein be collectively referred to as "Zimmer".

16.     Zimmer Daniel is located in Kane County at 695 Tollgate Rd, Elgin, Illinois 60123.

17.     At all relevant times, Zimmer Daniel has been the exclusive sales agent and distributor for Zimmer's orthopedic medical devices in Illinois.

18.     Zimmer Daniel earns a monetary commission on all Zimmer products sold in Illinois from Zimmer.

3

19.     Zimmer Daniel Associates is located in Cook County at 4145 166th St, Oak Forest, Illinois 60452.

20.     At all relevant times, Zimmer Daniel Associates has been the exclusive sales agent and distributor for Zimmer's orthopedic medical devices in Illinois.

21.     Zimmer Daniel Associates earns a monetary commission on all Zimmer products sold in Illinois from Zimmer.

22.     This products liability lawsuit seeks compensatory damages on behalf of GARY SMITH, who was implanted with an artificial hip replacement system known as the DUROM that the Defendant, Zimmer, designed, manufactured, marketed, sold and distributed.

23.     At all relevant times, Zimmer Daniel has been the exclusive sales agent and distributor for the DUROM in Illinois.

24.     At all relevant times, Zimmer Daniel Associates has been the exclusive sales agent and distributor for the DUROM in Illinois.

25.     The hip joint is where the femur connects to the pelvis.  The joint is made up of the femoral head (ball like structure at the top of the femur), which rotates within the acetabulum (a cup-like structure at the bottom of the pelvis).  In a healthy hip, both the femur and the acetabulum are strong, and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.  Over time, age and wear break down the cartilage.  This forces the bone of the femur to rub directly against the bone of the acetabulum, and it can cause severe pain and immobility.

26.     A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic.  A typical total hip replacement system consists of four separate components:  (1) a femoral stem, (2) a femoral head, (3) a liner and (4) an acetabular shell.  The surgeon hollows out a patient's femur bone, the femoral stem is implanted.  The femoral

4

head is a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

27.     The DUROM hip implant differs from the typical implant described above, because the "liner" and the "acetabular shell" are combined into one component (sometimes referred to as a "monoblock cup").

28.     The DUROM and related components were cleared under a process by the Food and Drug Administration (hereinafter referred to as the "FDA") known as a 510(k). A 510(k) medical device does not have to go through the rigors of a clinical study to gain approval by the FDA.

29.     The DUROM cup is made entirely of metal. The one-piece monoblock cup fits into the acetabulum, and the femoral head fits directly into the concave side of the cup.

30.     The back of the cup is porous, and is specially treated with a coating that was intended to help the bone in the hip socket grow into the porous surface.

31.     Contrary to the intended purpose of the design, the bone does not properly grow into the porous surface on the back of the cup. This causes the cup to loosen inside of the acetabulum.

32.     The DUROM hip implant design is more prone to component loosening when implanted into a human being than hip devices manufactured by other companies.

33.     Zimmer suspended the sale and/or distribution of the DUROM hip implant on or about July 22, 2008.

34.     Zimmer indicated in a release on or about July 22, 2008, that the suspension of the sale and distribution of the DUROM was due to implant loosening.

5

35.     On or about September 26, 2008, the FDA posted a Class 2 Recall of the DUROM Cup on its website (Recall Z-2420-2008).

36.     The FDA cited Zimmer's releases from July 22, 2008 in the recall action, and determined the cause for the recall to be "MISBRANDING: Labeling False and Misleading".

37.     Defendants did not make efforts to directly reach (i.e. by sending letters to individuals' homes) individuals who already had been implanted with the DUROM. Plaintiff continued to suffer injuries that otherwise would have been avoided due to the lack of diligence by Defendants in notifying affected individuals.

38.     Defendants knew or had reason to know of the issues related to the failure of the DUROM cup before the date that Plaintiff was implanted with the device.

39.     On information and belief, the DUROM cup fails at an unacceptably high rate. Some estimates indicate that the rate may be as high as between 20-30%, and that rate may be increasing with time.

40.     Plaintiff suffered and will continue to suffer severe injuries as a result of having this defective device implanted. Injuries that may be caused by a loose acetabular component include, but are not limited to the following: severe pain, damage to the bone in the hip socket, movement of the cup, impingement of the cup, dislocation of the hip, painful and risky revision surgery, metal wear (or metallosis), osteolysis, necrosis, permanent impairment of the ability to walk, and permanent risk of future corrective surgeries.

41.     Before January 10, 2007, GARY SMITH began medical treatment on his right hip with Dr. M. Stephen Huss, M.D.

6

42.     Before January 10, 2007, Dr. M. Stephen Huss, M.D., through his experience and training in the practice of medicine, indicated GARY SMITH met the criteria for a total hip replacement on his right hip.

43.     On or about January 10, 2007, Dr. M. Stephen Huss, M.D., implanted the Zimmer DUROM™ system consisting of the following components: DUROM Acetabular Cup and Metasul LDH Head into the left hip of GARY SMITH.

44.     At all relevant times and before the implantation of the DUROM in the PLAINTIFF, ZIMMER and knew that the DUROM was defective and harmful to consumers.

45.     At all relevant times and before the implantation of the DUROM in the PLAINTIFF, ZIMMER had regular and frequent communications from surgeons who had implanted the DUROM, including PLAINTIFF's surgeon, regarding failures and complications of the DUROM.

46.     Sometime after January 10, 2007, GARY SMITH learned that his DUROM failed and needed to be revised with another hip prosthesis.

47.     Sometime after January 10, 2007, GARY SMITH learned that his DUROM had prematurely failed.

48.     On or about May 21, 2014, Dr. M. Stephen Huss, M.D. removed the DUROM implant from GARY SMITH and replaced it with another hip prosthesis.

49.     During the revision procedure on May 21, 2014, Dr. M. Stephen Huss, M.D. noted that extensive soft tissue damage was present.

## COUNT I – STRICT PRODUCT LIABILITY AGAINST ZIMMER

50.     GARY SMITH incorporates by reference paragraphs 1 through 49 of the Common Allegations as if fully set forth herein.

51.     ZIMMER had a duty to place into the stream of commerce, manufacture, distribute, market, promote, and sell the DUROM that was not defective and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

52.     ZIMMER did in fact sell, distribute, supply, and/or promote the DUROM to GARY SMITH and his implanting physician.

53.     ZIMMER expected the DUROM it was selling, distributing, supplying, manufacturing, and/or promoting to reach, and it did in fact reach, implanting physicians and consumers, including Plaintiff and his implanting physicians, without substantial change in the condition.

54.     At the time the DUROM left the possession of ZIMMER and the time DUROM entered the stream of commerce, the DUROM was in an unreasonably dangerous and defective condition.  These defects include but are not limited to the following:

(a)     The DUROM was not reasonably safe as intended to be used;

(b)     The DUROM had an inadequate design for the purposes of hip replacement;

(c)     The DUROM contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

(d)     The DUROM's unstable and defective design resulted in a hip prosthesis which had risks which exceeded the benefits of the medical device;

(e)     The DUROM's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

(f)     The DUROM failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the PLAINTIFF to an unreasonable

8

risk of harm beyond that contemplated by an ordinary person;

(g)     The DUROM was insufficiently tested;

(h)     The warning to PLAINTIFF and PLAINTIFF's implanting physicians about the dangers the DUROM posed to consumers including PLAINTIFF were inadequate. The inadequacy of ZIMMER's warnings include, but are not limited to, the following:

i.   Insufficient to alert PLAINTIFF and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the DUROM, subjecting PLAINTIFF to risks which exceeded the benefits of the DUROM;

ii.  Contained misleading warnings emphasizing the efficacy of the DUROM while downplaying the risks associated with it, thereby making use of the DUROM more dangerous than the ordinary consumer would expect;

iii. Contained insufficient and/or incorrect warnings to alert consumers, including PLAINTIFF, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the DUROM;

iv.  Did not disclose that it was inadequately tested;

v.   Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the DUROM;

vi.  Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers;

vii. Failure to notify individuals who had been implanted with this defective device, including PLAINTIFF, that the device was dangerous and may cause severe injury, thereby depriving PLAINTIFF of the opportunity to seek treatment avoid further injury.

55.   GARY SMITH used the DUROM for its intended purpose, i.e. hip replacement.

56.     GARY SMITH could not have discovered any defect in the DUROM through the exercise of due care.

57.     ZIMMER as designer, manufacturer, marketer, and distributor of medical devices are held to the level of knowledge of an expert in their field.

58.     GARY SMITH and the implanting physician did not have substantially the same knowledge as the designer, manufacturer, or distributor:  ZIMMER.

59.     As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by ZIMMER, GARY SMITH was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, GARY SMITH was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

        WHEREFORE, GARY SMITH prays for judgment against Defendants, Zimmer US, Inc., Zimmer, Inc., Zimmer Holdings, Inc. and Zimmer Surgical, Inc., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT II – NEGLIGENCE AGAINST ZIMMER

60.     Plaintiffs incorporate by reference paragraphs 1 through 49 of the Common Allegations as if fully set forth herein.

61.     At all times relevant, it was the duty of ZIMMER to exercise due care in designing, testing, manufacturing, distributing, marketing, promoting, and selling of the DUROM such that it would be reasonably safe for its intended use.

62.     ZIMMER's negligence in the designing, testing, manufacturing, distributing, marketing, promoting, and selling of the DUROM.

        a. DUROM was negligently designed and manufactured, which caused loosening;

10

b. surgical protocol which, among other things, creates a requisite degree of surgical skill for proper use of the device that is not possessed by a significant number of U.S. surgeons, even after a proper review of all of the DUROM surgical technique literature, other ZIMMER literature, and proper training in residency programs;

c. ZIMMER committed manufacturing errors, including but not limited to size tolerances out of specification and not within industry acceptable standards.

d. ZIMMER, in advertising, marketing, promoting, packaging, and selling the DUROM, negligently misrepresented material facts regarding the DUROM's safety, efficacy, and fitness for human use by claiming the DUROM was fit for its intended purpose when, in fact, it was not;

e. ZIMMER, in advertising, marketing, promoting, packaging, and selling the DUROM, negligently misrepresented material facts regarding the DUROM's safety, efficacy, and fitness for human use by claiming the DUROM had been adequately and reliably tested when, in fact, it was not;

f. ZIMMER, in advertising, marketing, promoting, packaging, and selling the DUROM, negligently misrepresented material facts regarding the DUROM's safety, efficacy, and fitness for human use by claiming the DUROM was safe and effective and was appropriate for use by human beings when, in fact, it was not;

g. ZIMMER, in advertising, marketing, promoting, packaging, and selling the DUROM, negligently misrepresented material facts regarding the DUROM's safety, efficacy, and fitness for human use by claiming the risk of serious adverse events and/or effects from the DUROM was comparable to that of other hip replacement systems, when in fact it was not;

h. ZIMMER, in advertising, marketing, promoting, packaging, and selling the DUROM, negligently misrepresented material facts regarding the DUROM's safety, efficacy, and fitness for human use by claiming the DUROM had not caused or contributed to serious adverse events and/or effects requiring the premature explants of the device when, in fact, it had.

11

63.     ZIMMER knew or had reason to know that GARY SMITH, as a member of the general public for whose use the DUROM was placed into interstate commerce, would be likely to use the DUROM in a manner described in this Complaint.

64.     ZIMMER knew or reasonably should have known of the danger associated with the manner and circumstances of GARY SMITH's foreseeable use of the DUROM, which danger would not be obvious to the general public.

65.     As a direct and proximate result of one or more of the forgoing wrongful act or omissions by ZIMMER, GARY SMITH was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, GARY SMITH was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, GARY SMITH prays for judgment against Defendants, Zimmer US, Inc., Zimmer, Inc., Zimmer Holdings, Inc. and Zimmer Surgical, Inc., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT III – BREACH OF WARRANTY AGAINST ZIMMER

66.     Plaintiffs incorporate by reference paragraphs 1 through 49 of the Common Allegations as if fully set forth herein.

67.     GARY SMITH currently is not in possession of any document relating to representations, warnings, and/or communications made by defendants in this action.  GARY SMITH reserves the right to present evidence in support of the claim which is not presently in his possession, but which will be discovered in the ordinary course of litigation.  Such evidence may include, but is not necessarily limited to:  Instruction for Use Manuals; all written material or information provided on and/or within any and all packaging associated with GARY SMITH'

12

device; manufacturer's labels, package inserts; Adverse Event Reports; clinical trial data; medical literature; medical research findings and opinions; medical publications; advertisements; sales and promotional materials; internal memoranda, emails, communications and databases; sales, prescription and adverse event report databases; and communications from ZIMMER in this action, including ZIMMER's employees, officers, directors, agents, representatives, contractors and business associates, to the public, medical community, Plaintiff's implanting surgeon and GARY SMITH. Upon information, knowledge and belief, GARY SMITH alleges the documents, instruments and/or evidence stated above are in the possession of ZIMMER.

68.    At the time ZIMMER marketed, sold, and/or distributed the DUROM, it knew that the hip device was intended for human use.

69.    At the time ZIMMER marketed, sold, and/or distributed the DUROM, GARY SMITH was a foreseeable user of the device.

70.    At the time ZIMMER marketed, sold, and/or distributed the DUROM, it expressly and/or impliedly warranted that the hip, including all of its component parts, was safe and merchantable for their intended use.

71.    GARY SMITH and his implanting surgeon reasonably relied upon the representations that the DUROM was of merchantable quality and safe for their intended uses.

72.    GARY SMITH used the DUROM for its intended purpose.

73.    Contrary to the express and implied warranties, at the time ZIMMER marketed, sold and/or distributed the DUROM, it was not of merchantable quality or safe for their intended use as described above.

74.    As a direct and proximate result of one or more of the forgoing wrongful act or omissions by ZIMMER, GARY SMITH was caused to suffer and sustain injuries of a permanent

nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, GARY SMITH was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, GARY SMITH, prays for judgment against Defendants, Zimmer US, Inc., Zimmer, Inc., Zimmer Holdings, Inc. and Zimmer Surgical, Inc., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

### COUNT IV – STRICT PRODUCT LIABILITY AGAINST ZIMMER DANIEL

75.     GARY SMITH incorporates by reference paragraphs 1 through 49 of the Common Allegations, as if fully set forth herein.

76.     ZIMMER DANIEL had a duty to place into the stream of commerce, distribute, market, promote, and sell the VERYSYS that was not defective and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

77.     ZIMMER DANIEL did in fact sell, distribute, supply, deliver, and/or promote the DUROM to GARY SMITH and his implanting physician.

78.     At all times material and before the implantation of the DUROM in the PLAINTIFF, ZIMMER DANIEL had actual knowledge of the defects in the DUROM as alleged herein.

79.     At all times material and before the implantation of the DUROM in the PLAINTIFF, ZIMMER DANIEL had regular communications with the implanting surgeons who utilized the DUROM, including the surgeon who implanted the DUROM in the PLAINTIFF, such that ZIMMER DANIEL was in a unique position to provide ZIMMER with warnings relative to the alleged defects in the DUROM and did in fact provide ZIMMER with such warnings based upon complaints and comments ZIMMER DANIEL received from the

14

implanting surgeons.

80.     ZIMMER DANIEL expected the DUROM it was selling, delivering, and distributing to reach, and it did in fact reach, implanting physicians including Plaintiff and his implanting physicians, without substantial change in the condition.

81.     At the time the DUROM left the possession of ZIMMER DANIEL, and the time DUROM entered the stream of commerce, the DUROM was in an unreasonably dangerous and defective condition.  These defects, of which ZIMMER DANIEL had actual knowledge, include but are not limited to the following:

(a)     The DUROM was not reasonably safe as intended to be used;

(b)     The DUROM had an inadequate design for the purposes of hip replacement;

(c)     The DUROM contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

(d)     The DUROM's unstable and defective design resulted in a hip prosthesis which had risks which exceeded the benefits of the medical device;

(e)     The DUROM's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

(f)     The DUROM failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the PLAINTIFF to an unreasonable risk of harm beyond that contemplated by an ordinary person;

(g)     The DUROM was insufficiently tested;

(h)     The warning to PLAINTIFF and Plaintiff's implanting physicians about the dangers the DUROM posed to consumers including PLAINTIFF were inadequate,

15

including, but are not limited to, the following:

    i. Insufficient to alert PLAINTIFF and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the DUROM, subjecting PLAINTIFF to risks which exceeded the benefits of the DUROM;

    ii. Contained misleading warnings emphasizing the efficacy of the DUROM while downplaying the risks associated with it thereby making use of the DUROM more dangerous than the ordinary consumer would expect;

    iii. Contained insufficient and/or incorrect warnings to alert consumers, including PLAINTIFF, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the DUROM;

    iv. Did not disclose that it was inadequately tested;

    v. Failed to convey adequate post-marketing warnings regarding the risk, severity, scope and/or duration of the dangers posed by the DUROM;

    vi. Failed to contain instructions sufficient to alert consumers to the dangers they posed and to give them the information necessary to avoid or mitigate those dangers.

    vii. Failure to notify individuals who had been implanted with this defective device, including PLAINTIFF, that the device was dangerous and may cause severe injury, thereby depriving PLAINTIFF of the opportunity to seek treatment avoid further injury.

82.    GARY SMITH used the DUROM for its intended purpose, i.e. hip replacement.

83.    GARY SMITH could not have discovered any defect in the DUROM through the exercise of due care.

84.    ZIMMER DANIEL, as a distributor of medical devices, is held to the level of knowledge of an expert in their field.

85.    GARY SMITH and the implanting physician did not have substantially the same

16

knowledge as the distributor: ZIMMER DANIEL.

86.     As a direct and proximate result of one or more of the forgoing wrongful acts or omissions by ZIMMER DANIEL, the PLAINTIFF was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, GARY SMITH was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, GARY SMITH prays for judgment against defendant ZIMMER DANIEL, in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT V – STRICT PRODUCT LIABILITY AGAINST ZIMMER DANIEL & ASSOCIATES

87.     GARY SMITH incorporates by reference paragraphs 1 through 49 of the Common Allegations, as if fully set forth herein.

88.     ZIMMER DANIEL & ASSOCIATES had a duty to place into the stream of commerce, distribute, market, promote, and sell the VERYSYS that was not defective and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

89.     ZIMMER DANIEL & ASSOCIATES did in fact sell, distribute, supply, deliver, and/or promote the DUROM to GARY SMITH and his implanting physician.

90.     At all times material and before the implantation of the DUROM in the PLAINTIFF, ZIMMER DANIEL & ASSOCIATES had actual knowledge of the defects in the DUROM as alleged herein.

91.     At all times material and before the implantation of the DUROM in the

PLAINTIFF, ZIMMER DANIEL & ASSOCIATES had regular communications with the implanting surgeons who utilized the DUROM, including the surgeon who implanted the DUROM in the PLAINTIFF, such that ZIMMER DANIEL & ASSOCIATES was in a unique position to provide ZIMMER with warnings relative to the alleged defects in the DUROM and did in fact provide ZIMMER with such warnings based upon complaints and comments ZIMMER DANIEL & ASSOCIATES received from the implanting surgeons.

92.     ZIMMER DANIEL & ASSOCIATES expected the DUROM it was selling, delivering, and distributing to reach, and it did in fact reach, implanting physicians and consumers including Plaintiff and his implanting physicians, without substantial change in the condition.

93.     At the time the DUROM left the possession of ZIMMER DANIEL & ASSOCIATES, and the time DUROM entered the stream of commerce, the DUROM was in an unreasonably dangerous and defective condition.  These defects, of which ZIMMER DANIEL & ASSOCIATES had actual knowledge, include but are not limited to the following:

(i)     The DUROM was not reasonably safe as intended to be used;

(j)     The DUROM had an inadequate design for the purposes of hip replacement;

(k)     The DUROM contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

(l)     The DUROM's unstable and defective design resulted in a hip prosthesis which had risks which exceeded the benefits of the medical device;

(m)     The DUROM's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

18

(n)    The DUROM failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the PLAINTIFF to an unreasonable risk of harm beyond that contemplated by an ordinary person;

(o)    The DUROM was insufficiently tested;

(p)    The warning to PLAINTIFF and Plaintiff's implanting physicians about the dangers the DUROM posed to consumers including PLAINTIFF were inadequate, including, but are not limited to, the following:

    viii.    Insufficient to alert PLAINTIFF and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the DUROM, subjecting PLAINTIFF to risks which exceeded the benefits of the DUROM;

    ix.    Contained misleading warnings emphasizing the efficacy of the DUROM while downplaying the risks associated with it thereby making use of the DUROM more dangerous than the ordinary consumer would expect;

    x.    Contained insufficient and/or incorrect warnings to alert consumers, including PLAINTIFF, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the DUROM;

    xi.    Did not disclose that it was inadequately tested;

    xii.    Failed to convey adequate post-marketing warnings regarding the risk, severity, scope and/or duration of the dangers posed by the DUROM;

    xiii.    Failed to contain instructions sufficient to alert consumers to the dangers they posed and to give them the information necessary to avoid or mitigate those dangers.

    xiv.    Failure to notify individuals who had been implanted with this defective device, including PLAINTIFF, that the device was dangerous and may cause severe injury, thereby depriving PLAINTIFF of the opportunity to seek treatment avoid further injury.

94.     GARY SMITH used the DUROM for its intended purpose, i.e. hip replacement.

95.     GARY SMITH could not have discovered any defect in the DUROM through the exercise of due care.

96.     ZIMMER DANIEL & ASSOCIATES, as a distributor of medical devices, is held to the level of knowledge of an expert in their field.

97.     GARY SMITH and the implanting physician did not have substantially the same knowledge as the distributor:  ZIMMER DANIEL & ASSOCIATES.

98.     As a direct and proximate result of one or more of the forgoing wrongful acts or omissions by ZIMMER DANIEL & ASSOCIATES, the PLAINTIFF was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, GARY SMITH was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, GARY SMITH prays for judgment against defendant ZIMMER DANIEL & ASSOCIATES, in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT VI – NEGLIGENCE AGAINST ZIMMER DANIEL

99.     GARY L. SMITH incorporates by reference paragraphs 1 through 49 of the Common Allegations as if fully set forth herein.

100.    At all relevant times, ZIMMER DANIEL had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling DUROM cups which were not defective or unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

20

101.    ZIMMER DANIEL knew or should have known that GARY L. SMITH, as a member of the general public for whose use the DUROM cup was placed into commerce, would be likely to use the device in the manner described in this Complaint.

102.    ZIMMER DANIEL knew or had reason to know of the danger associated with the manner and circumstances of GARY L. SMITH's foreseeable use of the DUROM cup, which danger would not be obvious to the general public.

103.    That notwithstanding the aforesaid duty, ZIMMER DANIEL negligently and carelessly committed one or more of the following acts or omissions:

(a)    Distributed, marketed, and sold the device at issue which it knew, or through the exercise of reasonable diligence and care should have known, that the device was prone to premature loosening, failure, or adverse surgical outcomes;

(b)    Negligently and carelessly failed to adequately and sufficiently warn Dr. M. Stephen Huss or GARY L. SMITH before the date of GARY L. SMITH's surgery on or about January 10, 2007, that the DUROM device was prone to loosening, failure, or adverse surgical outcomes;

(c)    Negligently and carelessly ignored the known design flaws in the in the DUROM cup such that there was an unreasonably high likelihood that the DUROM cup would prematurely fail;

(d)    Failed to perform due diligence in monitoring reports of failures or adverse surgical outcomes before marketing, distributing, and selling the device at issue in this case; and

(e)    Otherwise negligently and carelessly engaged in distributing, marketing, promoting, and selling DUROM cups.

104.    As a direct and proximate result of one or more of the foregoing wrongful acts or omissions, GARY L. SMITH was harmed by ZIMMER DANIEL's breach of duty when the DUROM cup prematurely failed and caused his severe injuries, current and future pain and

suffering, current and future medical expenses, and future inability to attend to his normal affairs or enjoy a normal quality of life for an indefinite period of time.

WHEREFORE, GARY L. SMITH prays for judgment against defendant ZIMMER DANIEL, in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT VII – NEGLIGENCE AGAINST ZIMMER DANIEL & ASSOCIATES

105.    GARY L. SMITH incorporates by reference paragraphs 1 through 49 of the Common Allegations as if fully set forth herein.

106.    At all relevant times, ZIMMER DANIEL & ASSOCIATES had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling DUROM cups which were not defective or unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

107.    ZIMMER DANIEL & ASSOCIATES knew or should have known that GARY L. SMITH, as a member of the general public for whose use the DUROM cup was placed into commerce, would be likely to use the device in the manner described in this Complaint.

108.    ZIMMER DANIEL & ASSOCIATES knew or had reason to know of the danger associated with the manner and circumstances of GARY L. SMITH's foreseeable use of the DUROM cup, which danger would not be obvious to the general public.

109.    That notwithstanding the aforesaid duty, ZIMMER DANIEL & ASSOCIATES negligently and carelessly committed one or more of the following acts or omissions:

(f)    Distributed, marketed, and sold the device at issue which it knew, or through the exercise of reasonable diligence and care should have known, that the device was prone to premature loosening, failure, or adverse surgical outcomes;

22

(g)     Negligently and carelessly failed to adequately and sufficiently warn Dr. M. Stephen Huss or GARY L. SMITH before the date of GARY L. SMITH's surgery on or about January 10, 2007, that the DUROM device was prone to loosening, failure, or adverse surgical outcomes;

(h)     Negligently and carelessly ignored the known design flaws in the in the DUROM cup such that there was an unreasonably high likelihood that the DUROM cup would prematurely fail;

(i)     Failed to perform due diligence in monitoring reports of failures or adverse surgical outcomes before marketing, distributing, and selling the device at issue in this case; and

(j)     Otherwise negligently and carelessly engaged in distributing, marketing, promoting, and selling DUROM cups.

110.     As a direct and proximate result of one or more of the foregoing wrongful acts or omissions, GARY L. SMITH was harmed by ZIMMER DANIEL & ASSOCIATES's breach of duty when the DUROM cup prematurely failed and caused his severe injuries, current and future pain and suffering, current and future medical expenses, and future inability to attend to his normal affairs or enjoy a normal quality of life for an indefinite period of time.

WHEREFORE, GARY L. SMITH prays for judgment against defendant ZIMMER DANIEL & ASSOCIATES, in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## JURY DEMAND

PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY.

RESPECTFULLY SUBMITTED,

MEYERS & FLOWERS, LLC.

By:____/s/Peter J. Flowers_____
         Peter J. Flowers (#56079)
         PJF@Meyers-Flowers.com
         Meyers & Flowers, L.L.C.

23

225 West Wacker Drive, Suite 1515
Chicago, Illinois 60606
(630) 232-6333